This is Mamana v. Lt. Barben, Appellant No. 20-2364. We'll hear from you, Mr. Forbes. Thank you, Your Honor. Carlton Forbes for the appellant, Anthony Mammana. I'd like to reserve two minutes for rebuttal. That'll be granted. Thank you. When this case was last on appeal, a panel of this court held that the conditions of Mr. Mammana's confinement satisfied the first prong of an Eighth Amendment deliberate indifference claim, because they deprived him of the minimum necessities of life, namely warmth and sleep. On remand, Lt. Barben changed course, arguing for the first time that Mr. Mammana has no cause of action under Bivens. But Mr. Mammana's claim falls squarely within an established Bivens context. The Supreme Court first recognized such a claim in Carlson v. Green, a case involving deliberate indifference to a prisoner's health condition. And the court reaffirmed the availability of such a claim in Farmer v. Brennan, a case involving deliberate indifference to the risk of prisoner violence. Can we talk about that for a second? Because it was my impression that Farmer did not reach that conclusion. And I base that, as I'm sure you know, on the subsequent decisions of the Supreme Court, repeatedly making clear that Bivens' actions had only been recognized in three contexts. So how do we deal with Farmer, given the court's later pronouncements on the scope of Bivens? Well, Your Honor, in the Supreme Court's subsequent cases, for example, Ziegler v. Abbasi, where it referred to its prior Bivens case law, it did not overrule Farmer. So Farmer still is good law. And this court has held in Bistrian that Farmer is an established Bivens context. And to the extent that it wasn't explicitly mentioned in Abbasi, that could be because the Supreme Court just viewed it as not distinct from the context first established in Bivens. So I think Ziegler is pretty clear in saying, here are the contexts. I mean, we could have a spirited debate about whether the line of Bivens jurisprudence accords with many principles, including common law and natural law understandings of remedies that should be available to those who have been grievously injured by the state. But we are here, right? We are in the Bivens world. And it seems to me that Hernandez, in particular, says it is very limited. And so I'm struggling a bit to see how we can read Farmer's continuing vitality after Hernandez, even if, and I understand Bistrian is out there, but Hernandez is telling us very clearly, it's these three contexts. And I have trouble saying that I can chalk all of that up to just omission, that they just didn't mention it. I mean, it seems the whole point in Hernandez and Abbasi, for that matter, was to say, we are mentioning this because we want to be clear about the context we have currently recognized. So help me out a little bit with that one. Well, Your Honor, in Carlson, the court held that there was a Eighth Amendment deliberate indifference claim for prisoner officials who were deliberately indifferent to a substantial risk of harm. In that case, it was a denial of deliberate indifference towards prisoners' harm. It was just in that case, exposure to prisoner-on-prisoner violence. And so there's a way of reading Farmer that is consistent with Carlson. You don't need to view it as an independent new Bivens context. And that's why the Supreme Court in Ziegler v. Abbasi and in Hernandez only referred to Carlson Davis and Bivens. And that's certainly the way that this court has viewed it in Bistrian. So are you saying that the reason why Farmer is not explicitly mentioned is because Carlson is talking about conditions of confinement, had in front of a type of condition of confinement, meaning medical care for the lack of it, and that Farmer was another conditions of confinement, and that was a failure to protect circumstances? That's right, Judge Schwartz. And if you look at Supreme Court's conditions of confinement cases in other contexts, for example, the Wilson case, what Justice Scalia said there was that the prison has an obligation to provide for humane conditions and there is no practical difference between denial of medical care and other conditions of confinement, including, as relevant to this case, denial of warmth and sleep. And so there is an established Bivens context for deliberate indifference claims where there is a substantial risk of harm. Exposure to prisoner-on-prisoner violence is one type of harm that would fall under that context, as would be an extreme and protracted deprivation of sleep and warmth, which is what happened here. In Abbasi, we obviously know it's a Fifth Amendment claim and it involved detainees, hence the Fifth Amendment, not the Eighth. But when they started talking about the plaintiff's claims there about conditions of confinement, among the things the the confinement conditions that existed. In the Supreme Court's case in Abbasi, they didn't extend a cause of action there to those detainees or remedies to them. Is that because of who they sued, meaning high-level officials challenging a policy, or was the court communicating something broader than that, namely, condition of confinement claims can't be brought under Bivens? Well, it was a number of factors, Your Honor, and certainly the individuals that were sued were part of that analysis. But the court said, well, first of all, there were two groups of claims in Abbasi. There were the sort of high-level detention policy claims. Those were right after, those were imposed right after the September 11 terrorist attacks. And so they implicated high-level national security policy with a broad national scope. I think that's why for those category of claims, the Supreme Court said, look, this is really a different Bivens context. There were a separate group of claims that were filed against prison wardens related to abuse of detainees in those prison facilities. But even there, what the court said was that, look, this is not an allegation that the wardens themselves engaged in some type of conduct that to adequately supervise prison guards were the ones that were actively abusing the detainees. And they said, because this is, as you mentioned, a different constitutional claim under the Fifth Amendment, and because of a lack of judicial guidance on the level of supervisory authority that these wardens needed to have over there, the prison guards were actually engaged in the conduct. That's why the court treated it as a new Bivens context and then remanded to the cause of action. Would you tell me again, maybe, why you think Abbasi and Hernandez omitted any reference to Farmer? Well, Your Honor, as I said before, in Abbasi and in Hernandez, they referred to the two times that the court has expanded Bivens. One those was Carlson. I'm not sure they expanded Bivens, but they at least recognized in those cases that it was an appropriate Bivens action. Absolutely, Your Honor. I think that's correct, Your Honor. They recognized that it was an appropriate Bivens cause of action. And so having recognized that in the context of Carlson, where there was a deliberately indifferent Eighth Amendment violation that exposed a prisoner to substantial risk of harm, they did not need to add that they had recognized a new cause of action in Farmer. There's a way of reading Farmer that is consistent with Carlson. And that's exactly what the Third Circuit did in Bistrian. They said that, look, we're not going to put words in the Supreme Court's mouth, but it could be that they just viewed the context in Farmer, prisoner on prisoner violence, as not distinct from the context in Carlson. Although the court then went on in Bistrian to say, well, even if this was a new Bivens context, it is an exceedingly modest expansion of Bivens, and it would be appropriate to do so here. That's following the second prong of the analysis under Abbasi. But even a modest extension is still an extension. That's correct, Your Honor. And so I would still maintain that it falls within Carlson. Carlson was a conditions of confinement case involving a deprivation, a particular type of deprivation, which is the failure to provide adequate medical care. But, I mean, clearly, if you look at Farmer, they were referring to the plaintiff there, who was a transgender woman, and discussing the unique risks that that put her in when she was placed in the general prison population. And even if you look at Justice Souter's concurrence in Farmer, he even talks about the harms that she suffered in really medical terms. And so there's a way of viewing those cases as fully consistent with the case here as well. The ongoing protracted deprivation of sleep and warmth, which is the way that this court described Mr. Oman's claim when it was previously on appeal, clearly can have medical consequences. Sleep deprivation can lead to physical and mental harms. And so just as the deprivation, just as withholding medical treatment to a individual who has asthma can qualify as a deliberately indifferent Eighth Amendment violation, so too can the deprivation of sleep fall under that same context. I think that formulation, counsel, is quite right. I think there is a way to make all this work. The challenge, though, that I think you have is, does Abbasi and Hernandez allow for that kind of synthesis, right? Maybe if we were writing on a well, we have to find a way to sort of synthesize and stitch this together. But do you disagree that Abbasi and Hernandez are sort of saying that's exactly what you can't do? You can't find ways to pull this together because that results in even a modest extension of Bivens, which is what Abbasi says you can't. And so help me put your framework, which I think is right as a normal matter of precedential interpretation into the Bivens framework that we're given in Hernandez. Well, Your Honor, the Supreme Court in Abbasi and in Hernandez said that further expansion of Bivens was disfavored, but it didn't say that it was doomed. It left the door open for recognition of new Bivens claims. And I think that there are a few helpful factors that you can look to in Ziegler versus Abbasi that can help you in this case. So the first is in determining whether something is a new Bivens context. The court included a list of factors that you can look to, and chief among those are whether it involves the same constitutional claim. Here it does. It's a violation of the Eighth Amendment. The second would be whether it's against the same defendant or the same type of defendant. So if you look at cases like Malesko, there it was a private prison facility. Here it is a rank and file prison official under the BOP. And I think if you apply that framework here, you see that there is no meaningful difference. Perhaps there is a technical difference, but not a meaningful difference between this case and Carlson. And so I'd like to reserve the remainder of my time for about a little, unless the court has any further questions. I actually had another question on the turning to, if it's a new context. Yes, Your Honor. Wrong. And the question is on the, on the factor that talks about intrusion, would permitting a conditions claim of this sort be disrupted? I think you're in, are we going to start micromanaging at such tiny level that we're starting to intrude on how the prison is operated? Or is that an unnecessary concern because of what it takes to actually be able to state a claim under the Eighth Amendment? It's the latter, Your Honor. There are tools at the disposal of federal courts to weed out on meritorious claims, both under the PLRA, which imposes exhaustion requirements and asked the court to play a kind of gatekeeping function as well as with the defense of qualified immunity. What this court has looked to in cases like Bistrian, when trying to determine whether to recognize a new cause of action is, is whether it would entail kind of an evaluation of the decision-making of prison officials. So in Bistrian, there were two types of claims. There was the condition to confinement prisoner on prisoner violence claim. There was also a punitive detention claim. And what the court said is that for that second claim, the punitive detention claim, this is really about, you know, whether the prison was justified in moving the prisoner into segregated detention for that. I think it was the fourth time in Bistrian. And there it said that that's going to involve the type of day-to-day decision-making that we typically leave to prison officials. Just last week, the Fourth Circuit decided a similar case for Earl versus Shreve. That also involved a kind of First Classification claim involving placing a prisoner in segregated housing. And there too, they said, you know, inquiring into the decision-making of prison officials is something that's different. That's not what's happening here. Certainly, we believe that the prison was not justified in moving Mr. Momona into the yellow room, but separate and apart, there is a basic kind of baseline that prisons cannot go below in the conditions within that type of cell. And chief among them is providing adequate warmth and sleep. And I see my time has expired. And so I'll leave it there. Thank you, Your Honor. Let me just see if my colleagues have any further questions before I have you take a virtual seat. So Judge Mady, any further questions for counsel? You're on mute. That's good. Okay, Judge Draxler, any further questions for counsel? Can I just ask one? Was there any allegation in your operative complaint that your client was treated differently than any other prisoner that was put in the yellow room? There are no allegations about other prisoners that were put in the yellow room, Your Honor. But there are allegations that, you know, moving him into segregated housing was unreasonable and that prison guards taunted him while he was held in the yellow room. Okay. Thank you, Judge Schwartz. Okay. Thanks, Mike. All right. We'll hear back on rebuttal. Good morning, Your Honors. May it please the court. My name is Naveen Jani. I'm an assistant United States attorney representing the government on behalf of Lieutenant David Barbin. Your Honors, this case is about rights versus remedies. The last time Mr. Bermano was before this court, a panel decided that as pleaded, his allegations established a violation of the Constitution, a violation of his rights. The question before the court today is no matter how serious that violation may have been, is he entitled to remedy? And as Judge Mady pointed out, it's not a question of, does this make sense? Does this feel right? Do we follow natural law? It's really looking at Abbasi and what the Supreme Court is saying. But you didn't bring this argument the first time on your motion to dismiss before the district court. You didn't bring it on appeal. Have you waived it? I don't believe so, Your Honor, because the seriousness of the violation really is a threshold matter before you even get to write sure there'd be a cause of action. And so it made sense to address that element. And there was some question, this court found that, okay, there is seriousness. So then it kind of proceeds to the next step. So that would be the... Your analysis is we decide whether there's a cause of action after we decide whether there's been a violation. Do you think that's the order of operations? Here, because of the nature of the claim, this sort of new area, you had some Supreme Court president talking about, okay, you could have some kind of combination of these factors. It seems like, as a post-counsel pointed out, there's some sort of screening to get to the merits of these claims. So it seems like that filter is a better one to put first. You recognize the Fourth Circuit has found that you can waive this argument if it's not raised promptly. Now that procedural posture is different than this one, but you're aware that fail to raise this can be a Bivens claim. The Bivens argument can be waived. You recognize that, right? I recognize that, Your Honor. Okay. Let's turn to Farmer. You heard some questions to your adversary about whether Farmer is excluded by its omission as not a recognized context. What's your response to your adversary's points that Farmer is just another example of a conditions claim it's unnecessary, as we said in history, and for it to have been specifically identified? Sure. Thank you, Your Honor. Well, one thing we have is, and lower courts, courts of appeals, Supreme Court did this as a general practice prior to Abbasi, assuming there was a cause of action. And we do have language in the Farmer decision. The court says, in particular, the lower courts have uniformly held, and as we have assumed, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. So we have that in the decision. And it seems that that's the most plausible explanation, is that Farmer didn't establish a new context. It was assuming there was one, and then spent the bulk of the decision trying to explore this standard of deliberate indifference. And this court has recognized in history that it wasn't clear, right? It may be that the court simply viewed the failure to protect claim as not distinct from a deliberate indifference claim. Even if it is accepted as establishing a legitimate context, what this court did in Bistrian and what Mr. Momada would like the court to do now are very different. The Bistrian facts and the Farmer facts really were on all four, this prisoner and prisoner violence. And so this court felt like it didn't want to decline to conclude that Farmer had been overruled by implication. It saw Farmer as practically dictating its ruling because the lineup of the facts was so clear. And so that was a justified leap, one could say. What Mr. Momada wants to do here is establish this broader category. And the Supreme Court precedent and this court's precedent, they really get much finer when we talk about establishing a context. In Farmer, there's some preliminary language, and it funnels down. And then Farmer gets very clear that it's talking about, in particular, the issue of prevention of prisoner and prisoner violence. That's how the Supreme Court has viewed that case. That's how this court has viewed that case. And when we look at how, for example, Carlson's been distinguished, the Supreme Court talks about it being a claim against prison officials for failure to treat an inmate's asthma. It's very fine-grained distinctions. This idea of these kind of general types of claims is rejected. This court similarly characterized Carlson as concerning inadequate prison medical care. So think about this case, though, this particular case. I recognize there's not an inadequate medical care claim here, and we don't have a claim of failure to protect from inmate violence. But what we do have is a sequence of events in this particular case that begins with a plaintiff who tried to get medical care, didn't work out the way he wanted. They tried to place him in a cell with an inmate who had a history of violence towards other inmates. That didn't happen. But he ends up in the yellow room. So if you think step one is like, thank Carlson. Step two, thank Farmer. And here we have someone placed in a conditions of confinement. Doesn't this almost create almost a theme, a string between the different episodes, such that this really is in a different context? Because it arose out of circumstances that at least have the earmarks of some of the things that happened in Carlson and Farmer. Thank you, Judge Schwartz. Really, the factual distinctions do get finer. I mean, when we talk about new context, since we're at that first step of the threshold, there's a non-exhaustive list. And here, one of those factors is the constitutional right at issue. And this court in Vanderloch acknowledged that a recognition of a cause of action under a can vindicate every violation of the rights afforded by that particular amendment. So if we look at specifically, I mean, if we want to look at Carlson, it's very specifically what is a known condition. There was a death that occurred as a result. And it really, the violation that we're talking about, the right was the right to the care. Here, it may have been a preliminary thing that led to it, but what's being complained of is conditions of confinement. And so that is a different- So how do you reconcile the Wilson language? I know it's a 1983 case, but how do you reconcile the clear language that says the medical care a prisoner receives is just as much of a condition of confinement as the food he's fed, clothes he's issued, temperature in which he's kept, and his protection from others? How do you get around that language, where the Supreme Court is telling us these are all types of conditions of confinement that could violate the Eighth Amendment? The fact that it's a 1983 case, I think is dispositive, because this clumping of claims to create categories, that's something, I mean, Bivens was on track to become the federal equivalent of 1983, and the Supreme Court stopped that. And so to take this approach that what you can do in subsequent decisions, saying, no, we're going to apply a much stricter test to deciding claims, I really think that's dispositive in distinguishing Wilson. It just really doesn't apply here. So tell me, how do we reconcile this point? I get what you're saying, Congress created 1983, told us there was an avenue by which state prisoners can seek relief for a violation of the Eighth Amendment. But how can we ignore the following? Assume we have exactly the same conditions of confinement, in which a state prisoner is housed, and is a violation of the Eighth Amendment, which prior to incorporation, only applied to federal officers. Your position would then have to require us to take the following position. Only state officials are subject to the Eighth Amendment restrictions. Federal officials could house and engage in the same sort of conduct for a federal inmate, and they're absolved from any kind of individual liability, but a state official is not. How do we reconcile that? We have this, I mean, Abassi really was recognizing, I mean, 20 years before Abassi, the Supreme Court already was referring to it as an Ancien Regime, right? Something that it changed courses on. And so we have that split. I think we really do have to accept that, and the Supreme Court has established that. Now, as opposing counsel said, they've created an avenue for creating new contexts and new causes. It's a very narrow opening, but the spirit of Abassi really is that they are doomed, that really, this shouldn't be created. And the fact that there would be this disparate result is something that the Supreme Court has pronounced its verdict on and is okay with. I mean, a similar argument could be made, okay, have somebody with a serious violation to their rights, should they have a remedy? What's the point of a right if you can't have a remedy? And really, the Supreme Court has said, that's when we want Congress to step in. And if it's going to go beyond what we've already done, we're going to leave that for Congress to remedy. We're not going to have courts do that. What factors do you say counsel's hesitation here? Let's assume it's a new context. What's the most, like, you think is the biggest factor that says we should hesitate, should this be a new context? Sure. The second step, the special factors, it is not a totality of circumstances test. It's not a balancing. It's a non-exhaustive list. And if the court finds one, even one factor, as this court said in Davis Dishes, if we have reason to pause before a blind business and new context, we reject the request. The government would suggest that one very strong special factor is the potential cost to the government of recognizing this private cause of action. And what's interesting here is the Supreme Court has talked about this idea of categories of cases. And Bistrian was quoting that we must be reluctant to establish whole categories of cases in which federal officers must defend against personal liability. And the MAC court similarly said, we are hesitant to create a category of cases which may well open the floodgates to litigation in this sphere. Mr. Momena's claim, even if his particular claim, the court finds it very serious, it is quantitatively different from a goosebumps claim. It is not qualitatively different. Once that door is opened, now we have this hazy area of the law, this warmth, there's a sleep, there's the mattress, the conditions, the blanket, the lights being on. We have all these factors, very ill-defined. And now the court will have stamped its imprimatur on this and said, okay, inmates who follow the litigation, now, if you have any one of these, we've opened the door to this category of cases. And now the courts will have to deal with it, whether it's screening, whether it's motion dismiss, they're going to enter the docket. They will have some encouragement and some sanction. So that is a huge factor. Government really see this as a case where the main factual distinction is the lights were on and the blankets weren't warm enough? I just want to understand. I mean, we can take any argument to its perhaps illogical conclusions, but is that really a fair characterization of what happened here? As the court announced in the first time around is that following Supreme Court president, some combination of some of these necessities of life, warmth, sleep, can create a constitutional violation, even if one of them alone didn't do it. And here, right? Would we be here if it was just that the lights were on the whole night? It's the temperature in the room. It's the lack of bedding and it's the light. So it's this combination, but it's really because it creates this category of conditions and confinement cases. I mean, we have this one cursory analysis from the ninth circuit in Reed that says, okay, yeah, these are the same things. Whereas we have half a dozen district court cases in this circuit, really making that distinction that the Supreme Court and third circuit have not allowed this category of cases, conditions of confinement. And that's the category that this claim would fall in for sure. Let's assume though the conditions were a dry cell. A dry cell is one where there's no running water at all. The bathroom, no running sink water, you can't wash your hands. And let's assume that the prisoner was placed there and was not permitted to have any toilet paper ability to engage in any kind of hygiene for five days as a result and couldn't leave the cell. So as a result, excrement is in the cell and he has to stay there with it and nobody lets him clean it up and clean himself up. Would you say that that is not a conditions of confinement case for which the eighth amendment would provide an opportunity for relief? I ask it this way because you're asking us to make a ruling because these facts may not be as extreme as the one I've just described, but that's not what we're deciding here. We've already decided in my model too, I guess the one that came up that as alleged it was sufficient, but take my dry cell circumstance, suing an individual, not a challenge to a policy made by a higher level official. Would it be the government's position that a Bivens claim could not be brought? It would. I mean, I see my time's expired if I may have just a minute to address the question. It is really the category and that's the way the government's reading Abassi and reading interpretations of Abassi by the circuit that it's about what is the context of the claim regardless of the specific facts. And is that a new context? And if there is, is there any one of these factors giving some pause? And so the answer is yes, that if it's falling in this conditions of confinement, it's not lining up with deliberate indifference to medical care. Now, if that prisoner three days in is suffering some symptoms saying, oh, now I'm sick because I'm near all this or whatever, then now we're in a different nature of claim. But here, like we have no physical injury, there's no treatment afterwards. So it's the idea of the conditions were uncomfortable. Now they may have been constitutionally uncomfortable, maybe ridiculously uncomfortable offending anyone, but this category of case, this conditions of confinement, that door should not be open. That's the government's position. It is a new context and there's plenty of reasons to hesitate. Okay. Let me see if my That's Traxler. No, thank you. All right. Thank you, counsel. Thank you so much, your honors. You're welcome. Mr. Forbes. Thank you, your honor. I just like to make three quick points in the limited time I have left. So the first, just briefly on your point about whether this was waived, I would just note that in Hernandez versus Mesa, the Supreme court has said that determining whether there is a Bivens cause of action is typically to be viewed as an antecedent question that should be addressed at the outset. And if you look at this court's prior panel opinion, it described it cited to farmer in describing Mr. Momona's claim, but the district court did not even attempt to analyze this claim under farmer. So that's point number one, point number two. So just in determining whether this claim is a new cause of a new cause of action or arises in an established Bivens context, my opponent on the other side, Mr. Johnny referred to the spirit of a bossy. But if you actually look at the text of a bossy, the Supreme court provided guidance about what, how to determine whether something was a new Bivens context. And it says, you can look at the rank of the officers involved here. It's the same, the constitutional right at issue here. It's the same. It's the eighth amendment, the generality or specific specificity of the official action. Again, this is a discreet conditions of confinement in a particular cell. It's not a high level executive function. And if you just go through that list, the factors that the Supreme court identified in a bossy, you'll see that they all apply here, that there are, they all point in the direction that this is an established Carlson claim. And then finally turning to the second prong of a bossy, whether there are special factors that counsel hesitation, I would just note that the factors that Lieutenant Barbin has raised were all considered and rejected industry. And there too, they considered whether the PLRA was a signal that Congress didn't want this a cause of action and said that that's not the case. They considered whether the additional burden imposed on prison officials and the courts was a reason to counsel hesitation. They said it does not, that's true of any Bivens claim. And the Supreme court clearly signaled that we can continue to have Bivens claims. And so just if you apply history, and if you apply Carlson, you see that this is a Bivens claim that arises in an established context. And to the extent that there is any need for further expansion, it's exceedingly modest. If it's true that in farmer exposing an individual to who has unique circumstances to prisoner of violence is enough to have a business Bivens cause of action. If it was true in Carlson, that exposing a prisoner to inadequate medical care due to his unique medical condition was enough for a Bivens conduct context cause of action, then it should be the case that exposing somebody to extreme and protracted deprivation of sleep, which is a requirement that we all face is enough for a Bivens cause of action here as well. So we respectfully ask the court to reverse the district court's order. Judge made. Did you have any questions to counsel? Nothing further. That's Traxler. Just one. And I think it can be answered yes or no. Was waiver asserted as a ground for your appeal? No, it was not, Your Honor. And if I could take a few additional words, I would just note that when this was briefed below, we did point out that this court had already recognized Mr. Momona's cause of action. So we did point out that this issue was essentially part of the panel decision before, but we recognized that we didn't explicitly frame it as a waiver argument. Okay. Thank you, Judge Schwartz. Thank you very much. Thank you both counsel for a very informative and helpful argument. The court will take the matter under advisement. Have a great rest of the day.